**UNITED STATES DISTRICT COURT**
DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

6413 Kansas Avenue Northeast
Washington, D.C.

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT

CASE NUMBER:

Special Agent Joshua C. Green, being duly sworn depose and say:

I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives and have reason to believe that
on the premises known as (name, description and or location)

6413 KANSAS AVENUE NORTHEAST, WASHINGTON, D.C. (This location is described as a multi-story red brick residence located on the east side of Kansas Avenue Northeast between Tuckerman Street and Eastern Avenue Northeast, Washington, D.C. There is a small white enclosed porch in the front of the residence and the front door has a white outer security door. The numbers "6413" are marked in black on the front of the roof of the small white porch. There is a driveway to the immediate north of the residence and a short fence in the front.)

in the District of Columbia, there is now concealed certain property, namely (describe the person or property)

      See Attachment A

Which are (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and instrumentalities of alleged crime(s): In violation of Title 21, United States Code, Section 841(a)(1).

The facts to support the issuance of a Search Warrant are as follows:

See Affidavit which is incorporated herein for reference, continued on the attached sheet and made a part hereof.

_____
Joshua C. Green, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives
(Affiant)

Sworn to before me, and subscribed in my presence
_____ at Washington, D.C.
Date and Time Issued

_____                _____
Name and Title of Judicial Officer                             Signature of Judicial Officer

**BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES**
**WASHINGTON, D.C.**

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR:**

**6413 KANSAS AVENUE NORTHEAST**
WASHINGTON, D.C.

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR 6413 KANSAS AVENUE NORTHEAST, WASHINGTON, D.C. This location is described as a multi-story red brick residence located on the east side of Kansas Avenue Northeast between Tuckerman Street and Eastern Avenue Northeast, Washington, D.C. There is a small white enclosed porch in the front of the residence and the front door has a white outer security door. The numbers "6413" are marked in black on the front of the roof of the small white porch. There is a driveway to the immediate north of the residence and a short fence in the front.

Your affiant, Joshua C. Green, being duly sworn, does depose and state that:

1. Your affiant in this matter is Special Agent Joshua C. Green of the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF). I am currently assigned to the Washington, D.C. area High Intensity Drug Trafficking Area (HIDTA) Task Force and I have been assigned to the HIDTA Task Force since becoming a Special Agent with the ATF in July of 2000. Prior to becoming an ATF Special Agent, I was a Special Agent with the former Immigration and Naturalization Service for over five years, the last three of which were in the Washington, D.C. area. Since becoming a Special Agent with the ATF, I have taken part in numerous narcotics and firearms related investigations involving armed drug traffickers, armed gangs, felons in possession of firearms and ammunition, firearms trafficking, and the use of firearms in furtherance of illegal drug trafficking. In addition, I have attended training related to narcotics and firearms at the Federal Law Enforcement Training Center in Glynco, Georgia and have received additional criminal investigation training, particularly related to illegal drug trafficking, offered by HIDTA.

2. I have participated in the execution of over one hundred and fifty search warrants in the Washington, D.C. metropolitan area, which have resulted in the recovery of firearms and ammunition, illegal drugs and suspected drug packaging material, suspected drug paraphernalia, including, but not limited to, electronic digital scales, cooking equipment, various chemical additives associated with illegal drug production, and other items for drug usage. In addition, these warrants have also led to the recovery of items such as shell casings, magazines, holsters, gun cases and safes, photographs of individuals with narcotics and firearms, large amounts of U.S. currency, records and documents

associated with drug trafficking, and documentary evidence indicative of ownership and/or control of a premises and/or vehicle.

3. During the course of your affiant's training and professional experience in the area of law enforcement, I have become familiar with narcotics and illegal drug-related crime in the Washington, D.C. metropolitan area and with the methods used to manufacture, package and to distribute controlled substances. This knowledge has in part been the result of being present during dozens of interviews of defendants, witnesses, confidential informants, police officers and other law enforcement officers. In addition to my participation in numerous search warrants as described above, I have also participated in the arrest of dozens of individuals in the Washington, D.C. metropolitan area for narcotics-related offenses. Based on this training and experience, I have learned that:

   A) It is common for narcotic traffickers to secrete narcotics in secure locations within residences, vehicles, businesses and other locations over which they maintain dominion and control, for ready access, and to conceal these items from law enforcement authorities. In addition, items and paraphernalia used to process or package illegal narcotics are often stored along with such secreted narcotics.

   B) It is common for individuals who sell narcotics to maintain in secure locations, such as their residence or "stash" house, large amounts of U.S. currency in order to maintain and finance their ongoing narcotic business. Other contraband proceeds of narcotics sales, such as jewelry and other valuables, may be stored in the residence along with currency. Additionally, your affiant knows that these same individuals keep receipts, bank statements, money drafts, letters of credit, money orders and cashier checks, bank checks, currency counting machines and other items related to the obtaining, secreting, transfer, or concealment of assets in the form of U.S. currency and other financial instruments.

   C) It is common for records of narcotic transactions and papers relating to the accumulation and disposition of assets (such as, but not limited to, books, ledgers, bank books and statements, and notes or logs) derived from narcotic trafficking to be stored by narcotic distributors in residences and/or vehicles. In addition, it is common for papers and documents related to the ownership, occupancy and/or control of the premises/vehicles to be stored within the premises and/or vehicles.

   D) It is common for people who sell illegal drugs to maintain addresses, telephone books, electronic paging devices, cellular telephones and other papers reflecting names, addresses, and/or telephone numbers of associates and co-conspirators. These items are frequently kept at the same location as the controlled substances. In addition, drug traffickers have photographs or video tapes of themselves and their associates in the drug trade, as well as the property derived from the distribution of narcotics.

E) Participants in drug trafficking and other violent criminal activity often possess and maintain weapons and ammunition. Weapons are often stored in the same location as the controlled substances and currency, such as the subject's residence and/or vehicles, for their protection and for the protection of their illegal narcotics and the assets generated from the sales of the illegal narcotics. Firearms are generally kept in secure locations to protect the items from theft and discovery by law enforcement authorities, thus reducing their exposure to criminal liability. In your affiant's experience, the recovery of weapons during the execution of search warrants is usually accompanied by the recovery of additional ammunition, magazines, bulletproof vests and documentary evidence indicative of ownership and possession of firearms.

4. As this affidavit is being prepared for the limited purpose of obtaining a search warrant for the premises noted, it is not intended to include each and every fact observed by your affiant, other law enforcement officers, or known to the government.  This affidavit is submitted with only those facts necessary to support probable cause for this application.

**SUMMARY OF INVESTIGATION**

5. For over the last four years members of the Washington, D.C. ATF-HIDTA Task Force have worked with a Confidential Informant, referred to in this affidavit as CI-1.  CI-1 has participated in a number of controlled narcotics and firearms purchases and has provided reliable information regarding firearms, narcotics trafficking and other violent criminal activity to ATF and other law enforcement agencies.  This information has led to the execution of numerous search warrants and the recovery of a large amount of illegal narcotics, firearms, ammunition, U.S. currency and other contraband.  Further, the information that CI-1 has provided has been verified accurate by your affiant and other members of the ATF/HIDTA Task Force.  No information provided by this source has ever been proven purposely incorrect or misleading.

6. In 2007, your affiant received information from CI-1 regarding a subject known to the CI as "Sludge", a trafficker in cocaine and other illegal drugs such as marijuana in the Washington, D.C. metropolitan area.  CI-1 stated that the subject used 6413 Kansas Avenue Northeast, Washington, D.C. as a location where he stores and sells illegal drugs.

7. Research was conducted by your affiant and it was determined that the aforementioned subject was possibly Antoine Demar WASHINGTON.  A photograph of WASHINGTON was obtained and shown to CI-1 who immediately recognized him as "Sludge", the individual known to use 6413 Kansas Avenue Northeast, Washington, D.C. as a as a base to conduct an illegal drug trafficking business.

8. A criminal record check was conducted and it was found that Antoine Demar WASHINGTON has a criminal history to include an arrest in Washington, D.C. on February 19, 1992, for Possession with Intent to Distribute Cocaine. WASHINGTON was subsequently convicted of this offense and was sentenced to 151 months incarceration. In addition, WASHINGTON was arrested on or about January 9, 2008, in Washington, D.C., while in possession of over 1,000 grams of suspected powder cocaine, over 200 grams of suspected crack cocaine and over two pounds of suspected marijuana.

9. During the last three months, I have repeatedly conducted surveillance at 6413 Kansas Avenue Northeast, Washington, D.C. As I had previously consulted the Washington, D.C. government website and determined that residential trash is collected in that neighborhood on Tuesdays, I have visited the location in the very early morning hours, between 2:00 a.m. and 3:00 a.m., of Tuesday mornings on four occasions. Only on one occasion, that of the early morning hours of April 8, 2008, have I observed any trash containers outside the residence although the neighboring residences on every occasion have had some trash containers out in front of the residences awaiting collection. In addition, I have checked the residence later on Tuesday mornings on additional occasions and found that again, trash containers would often be present (both before and after trash had been collected) in front of neighboring residences but no trash containers were in front of 6413 Kansas Avenue Northeast, Washington, D.C. Lastly, while conducting surveillance on a Friday morning I observed an unidentified male take a garbage container from the front of the residence to the side yard behind a fence, then enter the residence. While the reason for the consistent lack of trash being placed on the curb for collection is unclear, it would be consistent that an illegal drug trafficking or "stash" location might either produce little trash for collection or the occupants deliberately dispose of trash through another method or at another location in order to limit the ability of law enforcement to examine such trash.

10. On April 8, 2008, a Tuesday morning, I went to the location in order to conduct surveillance and determine if any trash had been placed out in front of the residence for collection. On that date, I found a trash can located curbside directly in front of the residence, off the curtilage and not behind any fence or enclosure. The other residences in the area also had trash cans put out front in preparation for the morning's refuse collection. I obtained a number of trash bags from the trash can located directly in front of the residence and removed these bags for closer inspection away from the immediate area. All of the bags contained household garbage and some contained mail matter addressed to 6413 Kansas Avenue Northeast, Washington, D.C. One of the bags that contained mail matter addressed to the location also contained suspected outer packaging for three separate kilogram packages of the type consistently used to package cocaine. Inside at least one of these packages was a white powder residue. I field tested a portion of this white substance and received a positive reaction for cocaine. In a second trash bag which also contained mail matter addressed to the

location, I found small pieces and stalks of green leafy substance. I field tested a portion of this green leafy substance and received a positive reaction for marijuana. I also found two clear plastic bags labeled "Purple Kush" and "Master Kush" which I believe are two varieties of hydroponically grown marijuana. I did not locate any smaller ziplock bags, the type more typically used to package small amounts of cocaine or marijuana for personal use. From my experience, the wrapping material for suspected cocaine would indicate that a quantity of cocaine large enough to be indicative of drug trafficking. In addition, the few stalks of suspected marijuana are indicative of marijuana trafficking in that they may represent the discarded portions of unwanted marijuana thrown out when breaking down larger quantities of marijuana for packaging and resale.

11. In summary, based on the information contained herein, your affiant believes that Antoine WASHINGTON, and/or other co-conspirators, is utilizing 6413 Kansas Avenue Northeast, Washington, D.C., as a base to conduct and facilitate an illegal drug trafficking operation. Furthermore, based on the aforementioned investigation, your affiant's training, personal observations and experience, your affiant has probable cause to believe that this residence contains evidence, instrumentalities and fruits of the offense of Distribution of a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1). Your affiant believes that probable cause exists that within 6413 Kansas Avenue Northeast, Washington, D.C., there is presently concealed drug packaging material and paraphernalia, records, receipts, bank books and statements, notes and ledgers, address books, contact telephone numbers and names, cellular phones and/or digital paging devices, documents related to the ownership, occupancy and/or control of the premises, illegal weapons, as well as U.S. Currency and/or other proceeds of narcotic sales. These items are listed more completely on a separate sheet included with this application and labeled "Attachment A". I therefore respectfully request a search warrant be issued for the premises, curtilage, and locked boxes and vehicles located within or on the

     premises and curtilage, of 6413 Kansas Avenue Northeast, Washington, D.C., authorizing the seizure of the aforementioned items and any additional contraband discovered within.

_____
Joshua C. Green
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to and subscribed before me this _____ day of April, 2008.

_____
United States Magistrate Judge
District of Columbia

ATTACHMENT A

**List of Items to be Seized at Premises**

1. Paraphernalia for packaging, cutting, weighing and distributing illegal drugs, including but not limited to, scales, baggies, and cutting agents.

2. Firearms, firearm magazines, firearm attachments, ammunition, firearm parts and holsters as well as documentation of the purchase, storage, possession, disposition, dominion and control of firearms, including paperwork and receipts.

3. United States currency, precious metals, jewelry and financial instruments.

4. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances.

5. Address and telephone books and papers reflecting names, address and telephone numbers.

6. Books, records, receipts, bank statements, and records, money drafts, letters of credit, money order and cashier's checks related to the obtaining, secreting, transfer, and concealment of assets and/or the expenditure of money.

7. Electronic equipment, such as mobile telephones, facsimile machines, telephone answering machines, telephone paging devices, currency counting machines.

8. Photographs and/or video tapes, in particular, those photographs and/or video tapes of co-conspirators, assets, controlled substances, or of individuals with controlled substances and those that assist in identifying associates and conspirators.

9. Indicia of occupancy, residence, and ownership of the premises, including but not limited to, utility and telephone bills, mail matter, canceled envelopes, and keys.